IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MARK A. SCHILLING and ZELENE M. SCHILLING,

    Defendants.

No. C05-3016-MWB

**MEMORANDUM OPINION AND ORDER REGARDING BENCH TRIAL ON THE MERITS**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. FINDINGS OF FACT* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A. Applicable Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *B. Factual Findings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*III. CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*IV. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Following a one-day bench trial in this controversy over the parties' respective interests in a parcel of farm property, the court is called upon to put an end to an acrimonious relationship that began almost ten years ago when the defendants first sought assistance for their fledgling farming operation from the plaintiff, the United States of America and its Agency, the United States Department of Agriculture, Farm Service

Agency (hereinafter "FSA"). In order to obtain the desired monetary assistance, the FSA required that the defendants grant the FSA a mortgagable interest in certain parcels of real property. Unfortunately, this dispute transpired because the defendants' farming operation eventually failed, and the resolution of the parties' business transactions is interdependent on the values of the precise properties that were ultimately mortgaged pursuant to various agreements entered into by the parties. The parties dispute whether a certain parcel of real property, what has become known as the "Section 31 farm property," should be included in determining the final sum necessary to wind up the parties' business dealings. The plaintiff contends it secured a mortgageable interest in the disputed parcel. The defendants dispute this fact and contend neither party intended to or actually granted a mortgageable interest in the Section 31 farm property.

## I. INTRODUCTION

On April 1, 2005, the FSA initiated this lawsuit against Mark and Zelene Schilling (hereinafter "the Schillings") by filing a three-count complaint with this court. In Count 1, the plaintiff seeks declaratory relief with respect to the validity of the FSA's lien on the Section 31 farm property. Alternatively, in Counts 2 and 3, the plaintiff seeks reformation of the parties' mortgage to include the Section 31 farm property. On June 27, 2005, the Schillings filed an answer to the plaintiff's complaint, generally denying that the Section 31 farm property was included in the FSA mortgage and requesting this court to determine the FSA's lien on the Section 31 farm property was invalid. Additionally, the Schillings raised a counterclaim, seeking an order from this court requiring the FSA process the Schillings' restructuring application by excluding the value of the Section 31 farm property

from the net recovery buyout value.[1] Thereafter, on July 7, 2005, the plaintiff filed its answer to the defendants' counterclaim, generally denying all the allegations therein. On June 5, 2006, the plaintiff filed a Motion For Summary Judgment (Doc. No. 23), requesting that this court declare the validity of the FSA lien on the Section 31 farm property. The defendants filed their resistance thereto on June 29, 2006. On August 25, 2006, this court denied summary judgment due to the presence of unresolved factual issues surrounding the representations made to the Schillings by the FSA (Doc. No. 29). Consequently, this court held a one-day bench trial on September 14, 2006. At this trial, the United States of America was represented by Martha A. Fagg, Assistant United States Attorney. The Schillings were represented by Joseph G. Basque of Iowa Legal Aid in Council Bluffs, Iowa. During the trial, Mr. Basque indicated that the Schillings no longer wished to pursue their counterclaim against the FSA. As such, the only remaining matter in the lawsuit is the FSA's original three-count Complaint. As the matter is now fully submitted and the court is now in a position to make its determination, the court will proceed to issue its decision pursuant to the parties' request.

## II. FINDINGS OF FACT

### A. Applicable Standards

Following a bench trial, Federal Rule of Civil Procedure 52 directs a district court to articulate its findings of fact and conclusions of law: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon . . . ." *Fed. R. Civ. P.* 52(a). A court may then

---

[1] Net recovery buyout is the process under which a debtor can buy out any existing FSA loans at either the lesser of either the current market value of the mortgaged property or the remaining unpaid FSA debt. *See* 7 C.F.R. § 1951.909(h)(4).

enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure. In reviewing a district court's order entering judgment after a bench trial, the court of appeals reviews the district court's factual findings for clear error and reviews its legal conclusions de novo. *Fed. R. Civ. P.* 52(a); *Speer v. City of Wynne, Ark.*, 276 F.3d 980, 984-85 (8th Cir. 2002). "Under this standard, [the Eighth Circuit Court of Appeals] will overturn a finding of fact only if it is not supported by substantial evidence in the record, if the finding is based on an erroneous view of the law, or if [the appellate court is] left with the definite and firm conviction that an error has been made." *Estate of Davis v. Delo*, 115 F.3d 1388, 1393 (8th Cir. 1997) (citing *Sawheny v. Pioneer Hi-Bred Int'l, Inc.*, 93 F.3d 1401, 1407-08 (8th Cir. 1996)). "A district court's choice between two permissible views of evidence cannot be clearly erroneous." *Id.* at 1393-94 (citing *Moody v. Proctor*, 986 F.2d 239, 241 (8th Cir. 1993)). In addition, a reviewing court gives due regard to the opportunity of the district court to judge the credibility of the witnesses. *Id.* at 1394; *Fed. R. Civ. P.* 52(a).

## *B. Factual Findings*

The undisputed facts between the parties are fully outlined in this court's previous ruling regarding the plaintiff's Motion for Summary Judgment. Accordingly, only a brief synopsis of the background of this lawsuit will be set forth here, as supplemented with a more detailed outline of the court's findings with respect to the disputed facts.

This controversy primarily concerns whether the FSA has a valid mortgage and lien on a certain tract of land—the Section 31 farm property—that was purchased by the Schillings on contract from Donald D. Barkema and Cheryl L. Barkema (hereinafter the "Barkemas"). The controversy came into fruition due to certain mortgage agreements the Schillings made with the FSA in 1997 and 1998. Somewhat more specifically, prior to

1997, the FSA granted the Schillings financial assistance in the form of loans on three separate occasions. Due to continued financial hardship, in 1997, and again in 1998, the Schillings applied for loan restructuring from the FSA. Both of these loan restructurings were effectuated pursuant to 7 C.F.R. § 1951.910.[2] Pursuant to this regulation, in order

---

[2] Section 1951.910(b) of Title seven of the Code of Federal Regulations states as follows:

(b)Lien on certain assets. Delinquent borrowers must pledge certain assets, essential and nonessential, unencumbered to the Agency as security at the time FLP loans are restructured, as follows:

(1) The best lien obtainable will be taken on all assets owned by the borrower. When the borrower is an entity, the best lien obtainable will be taken on all assets owned by the entity, and all assets owned by all members of the entity. Different lien positions on real estate are considered separate and identifiable collateral.

(2) Security will include, but is not limited to, the following: land, buildings, structures, fixtures, machinery, equipment, livestock, livestock products, growing crops, stored crops, inventory, supplies, accounts receivable, certain cash or special cash collateral accounts, marketable securities, certificates of ownership of precious metals, and cash surrender value of life insurance.

(3) Security will also include assignments of leases or leasehold interests having mortgageable value, revenues, royalties from mineral rights, patents and copyrights, and pledges of security by third parties.

(4) The exceptions set forth in § 1941.19(c) of subpart A of part 1941 of this chapter apply.

(5) These assets will be considered as additional security for the loans as well as any shared appreciation agreement. The value of the essential assets will not be included in the NRV calculation to determine restructuring. The Agency's lien will be taken only at the time of closing the restructured FLP loans.

(continued...)

to restructure the Schillings' loans, the FSA was required to secure the best lien obtainable on all assets owned by the Schillings, including real property. These regulations were provided to the Schillings on at least two separate occasions, and served the purpose of notifying them that the FSA would obtain a lien over all assets currently in the possession of the Schillings as additional security of the FSA debt.

In order to commence the loan restructuring process, the Schillings were required to disclose all of their real property interests. In both 1997 and 1998, the Schillings owned four parcels of real property—(1) a parcel purchased on a mortgage to Clear Lake Bank, referred to as Section 9; (2) a parcel acquired by executing a quitclaim deed from the Schillings' sons, referred to as the Sandry property;[3] (3) a parcel of land contiguous to the Section 31 farm property purchased on a mortgage to Northwest Bank, referred to as the Section 31 acreage; and (4) the Section 31 farm property purchased on land contract from the Barkemas. In 1997, prior to the finalization of the first round of loan restructuring paperwork, the Schillings met with Dennis Carlson, the farm loan manager associated with their case. During the trip to the office, the Schillings discussed that they wanted the property purchased on land contract to be excluded from the FSA's purview. The Schillings', and in particular Zelene Schilling's, primary reason for wanting to exclude the land contracts from the FSA's reach was their concern that their financial difficulties would somehow involve the other parties to the contracts and cause the Barkemas and the Sandrys

---

[2](...continued)

7 C.F.R. § 1951.910 (b).

[3]The Schillings' sons purchased this parcel of land via a land contract from the previous owners, the Sandrys. Hence, it is referred to by the parties and this court as the Sandry property.

6

hardship. At the meeting with Carlson, Zelene Schilling stated her concern to Carlson and informed him that she and her husband would not go along with the refinancing if the transaction involved the property purchased on land contract. Carlson did not represent to the Schillings that the property would be excluded. Instead, in response, he simply annotated in his notes, "subject to the Barkema contract." Carlson then turned the contracts around and attempted to explain the different sections of the document. Unfortunately, neither the Schillings, nor Carlson remember exactly what was explained or discussed.

What is certain, however, is that the Schillings believed the annotated verbiage "subject to" meant that the Barkema land—the Section 31 farm property—was excluded from the FSA's interest, not that the FSA would take a secondary interest subject to the Barkema's interest in the land. Later in that same meeting, when Carlson wrote down the Section 31 farm property description, Zelene Schilling inquired about his reasoning for including the description. Carlson explained to her that he had to include every asset they owned. Again, without seeking further clarification, the Schillings assumed Carlson simply had to list all of their assets and that the Section 31 farm property was excluded from the FSA's purview due to the inclusion of the phrase "subject to the Barkema contract."

Following the meeting between the Schillings and Carlson, Carlson prepared written mortgage documentation, commemorating the agreed-upon terms of the Schillings' loan restructuring. For reasons that are not entirely clear, the FSA was of the opinion that the Schillings' sons were still the title holders to the Sandry property. Therefore, the 1997 mortgage document failed to secure a lien over the Sandry property. The mortgage document did, however, clearly include and describe the Section 9 parcel. However, the mortgage document was not so lucid with respect to the Section 31 properties, due to a

shortcut taken by the FSA. Specifically, with respect to the Section 31 farm property, instead of retyping the property description on the 1997 mortgage document, subsequent to the paragraphs referencing the Section 9 parcel, the mortgage simply states, in a separate paragraph, that the FSA's interest is "[s]ubject to a contract held by Donald D. Barkema and Cheryl L. Barkema, Husband and wife, filed on June 26, 1996 Instrument 9605689 in Cerro Gordo County, Iowa." Following this statement, the reader is referenced to "Exhibit A." Exhibit A, attached to the mortgage documentation is a copy of the land contract executed between the Schillings and the Barkemas with respect to the Section 31 farm property. The land contract accurately describes the Section 31 farm property in full, but then excepts out the contiguous parcel of property—the Section 31 acreage—obviously because the Schillings purchased the Section 31 acreage in a separate transaction via a mortgage with Northwest Bank.[4] The documents executed in 1998 were virtually a mirror image of the 1997 documents, and the same oversight again occurred, even though a different FSA agent oversaw the transaction. Both in 1997 and 1998, the Schillings signed and executed the documents as prepared by the FSA loan officers.

Ultimately, the Schillings were unable to meet their obligations under the FSA mortgage. Consequently, in 2003, the Schillings again applied for primary loan servicing. This time, the Schillings' application was denied. Instead, in accordance with 7 C.F.R. § 1951.909(h)(4), the FSA proposed a loan buyout offer, often referred to as "net recovery buyout," under which the Schillings could buyout their FSA loans at the lesser of either the current market value of the mortgaged property or their unpaid FSA debt. At the time the FSA offered net recovery buyout to the Schillings, their debt exceeded the current market value of the property at issue. As such, the Schillings' requisite buyout amount

---

[4]Although there was some disagreement during the bench trial, the parties filed a written stipulation to these facts on September 26, 2006. (Doc. No. 41).

turned upon the current market valuation of the mortgaged property. The Schillings initially requested to buyout their FSA loans for approximately $65,000.00 to $68,000.00. The amount of the Schillings' offer was calculated by utilizing the value of tract 9, less any remaining debt. The FSA declined this offer. Instead, the FSA calculated the net recovery buyout at approximately $141,604.00, which is the value of tract 9 and the section 31 farm, less any remaining debt. The FSA's declination of the Schillings' offer and subsequent calculation of the net buyout recovery amount led to the current dispute between the parties regarding whether the section 31 farm property should be included as part of the buyout.

## III. CONCLUSIONS OF LAW
### *(*and some additional findings of fact*)*

The court will begin its analysis of the merits of the FSA's case. As a preliminary matter, the court notes that in its prior ruling regarding the plaintiff's motion for summary judgment, it previously concluded that, pursuant to Iowa law, the legal effect of the mortgage documents is that the FSA has a valid lien over the section 31 farm property, absent an independent justification for concluding otherwise, such as in the case of fraud or mistake. *See Schlosser v. Van Dusseldorp*, 101 N.W.2d 715, 719 (Iowa 1960) (noting that a person is bound by their signature absent fraud or mistake). Thus, the only remaining conclusion left to be drawn is whether the Schillings have an independent justification for concluding the Section 31 farm property should be excluded from the FSA's reach. Because the Schillings failed to plead fraud with particularity in accordance with Rule 9 of the Federal Rules of Civil Procedure, the only doctrine on which they can rely is that of mistake.

Here, an examination of the facts indicates that a mutual mistake, at least with

9

respect to the Section 31 farm property, did not occur. It is clear, that the FSA was obligated, pursuant to the governing regulations, to include *all* of the Schillings' assets in the loan restructuring transaction and that the Schillings received written notice of this fact accordingly. It is also clear, that the contract, although it could have been more artfully drafted, listed the Section 31 farm property as being included in the transaction, subject to the Barkemas' interest, and that the Schillings were aware of this fact, even though they misunderstood its legal effect. Although the Schillings were operating under the belief that the FSA would not be granted an interest in the Section 31 farm property, the FSA did not hold or operate under this same belief. This is readily transparent to the court because in order to except a piece of property at the time these agreements were entered into, Carlson, as the farm loan manager, would have had to get a letter from a higher authority authorizing such an exception. Thus, it is clear that the FSA intended to take an interest in *all* of the Schillings' assets, including the Section 31 farm property, and believed that was the ultimate effect of the contract. Thus, this court concludes that because the FSA's intent was accurately reflected in the contract, at least with respect to the Section 31 farm property, the Schillings failed to prove the existence of a mutual mistake.[5]

However, what is also clear is that despite the fact that the Schillings received notice of the FSA's intent to take a lien on *all* of their existing assets in writing, and were later verbally explained this intent by Carlson, albeit somewhat awkwardly, the Schillings continued to operate under the mistaken belief that the legal effect of the words "subject

---

[5]The mutual mistake that did occur was with respect to the Section 31 acreage. There, both parties intended the property to be included in the parties' agreement, however, due to an oversight and poor drafting of the agreement, the FSA did not take an interest in this parcel. However, the FSA has not requested relief with respect to the Section 31 acreage, and accordingly, in its discretion, the court will not sua sponte grant relief not encompassed within the pleadings.

to," meant the FSA did not take an interest in the Section 31 farm property. Thus, this court further concludes that a unilateral mistake undoubtedly did occur. Traditionally, where a mistake as to a basic assumption on which the contract is made is not shared by both parties, courts have been reluctant to allow a party to avoid a contract. *Restatement (Second) of Contracts* § 153, cmt. a. Indeed, under Iowa law, the unilateral mistake of one party does not relieve that party from its obligation absent a showing of "fraud, misrepresentation, or other misconduct." *State v. Unisys Corp.*, 637 N.W.2d 142, 150 (Iowa 2001) (citing *Bachman v. Easy Parking of Am., Inc.*, 562 N.W.2d 369 (1997)); *see also Employers Mut. Cas. Co. v. United Fire & Cas. Co.*, 682 N.W.2d 452, 455 (Iowa Ct. App. 2004) (citing *Unisys Corp.*, 637 N.W.2d at 150).[6] Unfortunately for the Schillings, the court can not find a compelling reason to relieve them from their obligation, no matter how sympathetic the court may be to their pitiable situation. The contract signed by the Schillings on not just one, but two, separate occasions listed the Section 31 farm property as consideration for their FSA loan. Although the Schillings misinterpreted the meaning of the "subject to" language, they were notified both before negotiations began in writing and during negotiations with Carlson that the FSA was required to take an interest in all of their property and that he had to list all of their assets in the restructuring agreement. Although Zelene Schilling indicated she would not go through with the deal if the Section 31 farm property was listed because she did not want to involve the

---

[6] Iowa's approach differs slightly from the approach set forth in the *Restatement (Second) of Contracts*. Under the principles set forth in the *Restatement*, a unilateral mistake of one party makes a contract voidable when either of two circumstances present themselves; first, if the mistake is such that enforcement of the contract would render an unconscionable result and second, if the other party had reason to know of the mistake or caused the mistake. *Restatement (Second) of Contracts* § 153. However, while Iowa's and the Restatement's approach may differ in verbiage, this court notes that the differences in the actual application of these principles is more than likely negligible.

Barkemas in their situation, this court concludes that in light of the Schillings' reasons for not wanting to include the Section 31 farm property, by granting the FSA an interest secondary to the Barkemas, Carlson thought he was acting in accordance with the Schillings' wishes because the Barkemas would be protected since, in the event of a default, the FSA would only have a claim on whatever amount remained after the Barkemas were paid. It is also highly probable that Carlson attempted to explain this fact to the Schillings and they simply misunderstood the difference between excluding the property from the agreement and including the property "subject to" the Barkemas' interest.[7] Even after Carlson explained that the Schillings had to list every asset, after Zelene Schilling inquired as to why the Section 31 farm property was being included, instead of probing further into the matter, the Schillings again assumed that Carlson was simply listing all the property they owned and that the "subject to" language somehow completely exempted the Section 31 farm property from the entire realm of the FSA's mortgage. The Schillings had every opportunity to read the contract, seek independent legal advice, and ask additional questions. Instead, the Schillings unfortunately chose to assume, without seeking further clarification, that the "subject to" language excluded the Section 31 farm property, even though they had received repeated notice that a lien over all of their assets would be obtained by the FSA. Although it is quite unfortunate, these

---

[7] The extent of the Schillings' confusion surrounding the entire transaction is exemplified by the fact they believed the Sandry property was excluded from the restructuring agreement because it was purchased on a land contract as well. This belief, however, was somewhat illogical considering the Schillings themselves did not purchase the land on contract; rather, their sons did. The Schillings thereafter acquired the property through a quitclaim deed. It would make little sense, even if the FSA did agree to exclude land purchased on contract, to exclude land purchased on contract by parties other than the Schillings. In reality, the FSA excluded the property because of the fact the FSA thought title to this property remained vested in the Schillings' sons.

facts reveal that the Schillings simply misunderstood not only the plain language of the contract, but in addition, the entire restructuring transaction. However, from this record, the court concludes that nothing was intentionally misrepresented to the Schillings or concealed from them by the FSA. Although it is probable that Carlson could have explained the transaction more thoroughly to the Schillings, the court does not conclude he intentionally misled them in any way. Accordingly, the facts are simply insufficient to justify reformation or rescission of the contract. In sum, because the Schillings are unable to establish fraud, misrepresentation or any other independent reason justifying reformation or rescission of the contract, the court is forced, albeit reluctantly, to find in favor of the plaintiff.

## IV. CONCLUSION

Because the Schillings have failed to prove reformation or rescission of the contract is warranted, the court in this non-jury trial finds in favor of the United States of America with respect to Count One of the Complaint. Accordingly, it is therefore declared, adjudged and decreed that the FSA has a valid mortgage against the Section 31 farm property by reason of both mortgages executed on April 23, 1997 and April 22, 1998. As Counts Two and Three request alternative relief, these counts are hereby denied as moot.

**IT IS SO ORDERED.**

**DATED** this 27th day of September, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA